**UNITED STATES, Plaintiff,**

v.

**Brant BROCKDORFF, Defendant.**

**No. CR. 97–325 TFH.**

United States District Court, District of Columbia.

Dec. 12, 1997.

Lisa Prager, Asst. U.S. Atty., U.S. Attorney's Office, Washington, DC, for Plaintiff.

Robert Charles Bonsib, Marcus & Bonsib, Greenbelt, MD, for Defendant.

## *OPINION*

THOMAS F. HOGAN, District Judge.

Pending before the Court is defendant's Motion to Dismiss Indictment. This Motion requires the Court to determine the constitutionality of a federal statute that criminalizes the action of crossing a state line for the purpose of engaging in a sexual act with a minor. This is a case of first impression. After carefully reviewing the briefs submitted by the parties along with the testimony given at a hearing held on November 24, 1997, the Court finds that the statute is constitutional, and will deny the motion.

## I. Factual Background

According to the government, on July 7, 1997, an undercover law enforcement agent

was signed onto America Online using the identity Britneyluv ("Britney"). While online, she was contacted by the defendant, Mr. Brant Brockdorff, using the screen handle, LivininMd. During this electronic conversation, the defendant allegedly said that he wanted to meet Britney for the purpose of having sexual contact, and he electronically sent her a suggestive photograph of himself.

Two days later, Britney again communicated with the defendant and purportedly told him that she was 13 years old. The government contends that Mr. Brockdorff replied that he still wanted to meet with Britney and spoke to her in explicit sexual terms. Several more conversations took place during the month of July. On August 4, pursuant to the defendant's request, Britney called him at NASA, where he worked.[1] In this conversation, too, Mr. Brockdorff is said to have talked explicitly with Britney regarding the details of their contemplated sexual encounter.

On August 6, in accord with their agreement, Mr. Brockdorff appeared at Mazza Gallerie to meet Britney.[2] Mazza Gallerie is a shopping mall located approximately one block over the Maryland/District of Columbia border. When he appeared at Mazza Gallerie, Mr. Brockdorff was arrested pursuant to 18 U.S.C. section 2423(b), Travel with Intent to Engage in a Sexual Act with a Juvenile. This statute reads, in pertinent part:

A person who travels in interstate commerce ... for the purpose of engaging in any sexual act ... with a person under 18 years of age ... shall be fined under this title, imprisoned not more than 10 years, or both.

After he was arrested and advised of his rights, Mr. Brockdorff allegedly admitted that he was coming to Mazza Gallerie to meet Britney. Although he denied that he was going to have intercourse with Britney, he acknowledged that they had discussed

---

1. Defendant's place of employment is located in Maryland.

2. According to defense counsel, on two other occasions, Mr. Brockdorff agreed to meet Britney at Mazza Gallerie, but then failed to appear.

that prospect. He denied knowing Britney's exact age but confessed that he thought she was in her teens.

## II. Defendant's Challenges

In his Motion to Dismiss Indictment, defendant challenges the statute under which he was indicted on three grounds:

1. Defendant asserts that the statute exceeds Congress' legislative power under the Commerce Clause. He contends that Congress has no power to punish one who travels in interstate commerce merely because she or he has the intention of committing an illegal or immoral act at the conclusion of the journey. He argues that some sort of overt act must be required.

2. Defendant asserts that the statute violates the Due Process Clauses because it impermissibly burdens the fundamental right to interstate travel.

3. Defendant argues that, by luring him over state lines for the sole purpose of manufacturing federal jurisdiction, the government cannot create a crime out of what otherwise would be non-criminal conduct.

### A. Commerce Clause Challenge

█ The statute under which Mr. Brockdorff has been indicted requires only that he cross state lines for the purpose of committing an illegal act. It does not require any overt act in furtherance of that intent. Mr. Brockdorff argues that, based on the Supreme Court's holdings in *U.S. v. Lopez*, 514

U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and *Caminetti v. U.S.*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917), among others, Congress does not have the authority to criminalize crossing state lines with illegal thoughts.

Mr. Brockdorff cites some dicta that supports his position. In *U.S. v. Dellinger*, the Court observed, "[t]here would be most serious doubt whether an individual's travel with intent to do something inimical to the interests of the community, but without any step other than the individual travel being taken to effect the intent, could be made an offense." 472 F.2d 340 (7th Cir.1972). In *Caminetti v. U.S.*, the Supreme Court stated, "[i]t may be conceded, for the purpose of the argument, that Congress has no power to punish one who travels in interstate commerce merely because he has the intention of committing an illegal or immoral act at the conclusion of the journey." 242 U.S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442 (1917).[3]

Dicta aside, the Eighth Circuit has already ruled on the constitutionality of a statute that is analytically indistinguishable from the statute under which Mr. Brockdorff was charged. *See U.S. v. Delpit*, 94 F.3d 1134 (8th Cir.1996). The *Delpit* decision pertained to a murder-for-hire statute that required proof of three elements for conviction: (1) that the defendant traveled or caused another to travel in interstate commerce, (2) with the intent that a murder be committed, (3) for hire. *See* 18 U.S.C. § 1958(a). The Court acknowledged that this was purely a "travel with intent" crime.

[The statute] does not prohibit murder or attempted murder. Instead, it outlaws us-

---

**3.** Defendant also cites *U.S. v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) to support his position Court's analysis in that case is inapposite to the statute here. *Lopez* cites three bases of congressional authority under the Commerce Clause:

First, Congress may regulate the use of the *channels* of interstate commerce.
Second, Congress is empowered to regulate and protect the *instrumentalities* of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Con-

gress' commerce authority includes the power to regulate those activities having a *substantial relation* to interstate commerce.
*Lopez*, 514 U.S. at 558–59 (emphasis added) (citations omitted). These three bases of congressional authority are analytically distinct. *See U.S. v. Pappadopoulos*, 64 F.3d 522 (9th Cir. 1995). *Lopez* concerned the "affecting commerce" basis of congressional authority (the third prong). The statute under which Mr. Brockdorff was indicted presents a "channels of commerce" issue, not an "affecting commerce" issue.

ing interstate commerce facilities with the intent that murder-for-hire be committed. Once the interstate commerce facility is used with the required intent the crime is complete. One who travels or causes another to travel in interstate commerce with the necessary murderous intent need not do anything else to violate the statute.

The *Delpit* Court held that this statute was constitutional, concluding, "that the Constitution gives Congress the power to regulate interstate commerce, which outlaws interstate murder-for-hire, is unquestionably a valid exercise of this power." *Id.* at 1149. There is no analytical difference between the requirements of the murder-for-hire statute and the statute under which Mr. Brockdorff was charged—both require nothing more than crossing a state line with an intent to commit a serious crime. While the Court does have constitutional concerns with such a statute, it finds no case law to persuade it that the Eighth Circuit's decision was incorrect. Thus, this Court will follow the Eighth Circuit's lead, and find that this "travel with intent" statute also is constitutional.

### B. Substantive Due Process

■ Mr. Brockdorff next argues that this statute impermissibly burdens his fundamental right to interstate travel, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. It is black letter law that the right to travel interstate is a fundamental one and that government action that unduly burdens a fundamental right is subject to strict scrutiny. *See e.g., Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). While the right to interstate travel is well-established, however, one does not have a fundamental right to travel for illicit purposes. *See Hoke v. U.S.,* 227 U.S. 308, 320–23, 33 S.Ct. 281, 57 L.Ed. 523 (1913); *U.S. v. Burton,* 475 F.2d. 469, 471 (8th Cir.1973) ("The citizen's right to travel is subordinate to the Congressional right to regulate interstate commerce when the travel involves the use of an interstate facility for illicit purposes"). Therefore, the Court finds that this statute, which criminal-

izes interstate travel when it is done with an illicit intent, does not impermissibly burden a fundamental right.

### C. Manufactured Jurisdiction

■ Finally, Mr. Brockdorff argues that the government impermissibly manufactured federal jurisdiction in this case, by luring him over state lines for the sole purpose of causing him to commit a federal offense. He notes that in Maryland, where both Mr. Brockdorff and Britney live, his conduct would not have been a crime unless a sexual act was completed. The government candidly admits that it chose Mazza Gallerie as a meeting place in order to cause Mr. Brockdorff to cross a state line. Still, the Court declines to adopt the doctrine of manufactured jurisdiction in a case such as this.

Manufactured jurisdiction is a narrow doctrine that emanates from the Second Circuit's decision in *U.S. v. Archer,* 486 F.2d 670 (2d Cir.1973). In *Archer,* the only federal jurisdictional nexus came from an interstate phone call *placed by the government.* The *Archer* Court stated that Congress, in enacting criminal laws, "did not mean to include cases where federal officers themselves supplied the interstate element and acted to ensure than an interstate element would be present." *Id.* at 682. While the *Archer* Court found an "inherent unfairness" where jurisdiction is manufactured, it did so in a case with very different facts than the case at hand. Later, in *U.S. v. Wallace,* the Second Circuit narrowed its holding in *Archer.* 85 F.3d 1063 (2d Cir.1996). It found that the government did not improperly manufacture federal jurisdiction in a prosecution for conspiracy to commit bank fraud even though an undercover agent supplied deposit slips from a federally insured bank on the defendant's demand for proof of deposit of stolen checks. The Court stated, "[c]ourts have refused to follow *Archer* when there is any link between the federal element and a voluntary, affirmative act of the defendant." *Id.* at 1065. Here, crossing the Maryland/District of Columbia border was completely voluntary on Mr. Brockdorff's part.

In addition, in a case presenting a situation very similar to Mr. Brockdorff's, the Fifth Circuit declined to apply the doctrine of manufactured jurisdiction. In *U.S. v. Clark*, a government agent took steps to ensure the existence of the interstate element of the offense, satisfaction of the interstate element was the sole reason for the taking of those steps, and the defendant voluntarily and of his own free will did the act that caused the interstate element to exist. 62 F.3d 110 (5th Cir.1995). The Court found that the government's actions were legitimate. *Id.* Here, although the government chose Mazza Gallerie for the sole purpose of creating a federal offense, Mr. Brockdorff voluntarily went there, knowing that he was crossing a state line. The Court finds that he did so at the risk of being subject to any laws based on crossing that line.

## III. Conclusion

Defendant Brant Brockdorff challenges the constitutionality of a statute that criminalizes crossing a state line for the purpose of engaging in a sexual act with a juvenile. He argues that such a statute is beyond the powers granted to Congress under the Commerce Clause, that the statute impermissibly burdens the fundamental right to travel, and that in this case, the government wrongfully manufactured federal jurisdiction. For the reasons stated above, the Court rejects each of these arguments and therefore Mr. Brockdorff's Motion to Dismiss Indictment is denied. An order will accompany this opinion.