UNITED STATES of America

v.

Nicholas BREDIMUS

No. CR.A. 302CR064L.

United States District Court,
N.D. Texas,
Dallas Division.

July 19, 2002.

**640**

Linda Groves, U.S. Attorney's Office, Department of Justice, Dallas, TX, for United States.

Thomas W. Mills, Jr., Tom Mills & Associates, Dallas, TX, for Nicholas Bredimus.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Defendant's Motion to Dismiss, filed May 3, 2002. After careful consideration of the motion, the government's response, the parties' supplemental briefing, and the applicable law, the court, for the reasons stated herein, denies Defendant's Motion to Dismiss.

### I. Factual and Procedural Background[1]

According to the government, on November 3, 2001, residents of the Chiang Rai Province, Thailand, reported to local law enforcement officers that several of their children were missing. Upon investigation, the Thai police discovered the missing children with Defendant Nicholas Bredimus ("Bredimus") in a hotel located in Chiang Rai Province. Several of these children told the police that Bredimus had paid them to allow him to take photographs of them in the nude and while he performed sexual acts on them. The Thai police subsequently arrested Bredimus for the alleged sexual abuse of these children and for allegedly producing images of child pornography.

On June 4, 2002, the grand jury returned a two-count superseding Indictment ("Indictment") that charged Bredimus with (1) traveling in foreign commerce with the intent to engage in a "sexual act" with children under the age of 16, in violation of 18 U.S.C. § 2423(b)[2] (Count 1); and (2) traveling in foreign commerce with the intent to use minors to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, in violation of 18 U.S.C. § 2251A(b)(2)(A) and (c)(1) (Count 2).[3] Bredimus now moves to dismiss the Indictment for lack of subject matter jurisdiction, pursuant to Fed.R.Crim.P. 12(b).[4]

---

1. On April 19, 2002, the court issued an order denying Defendant's Motion to Revoke Order to Detain Defendant Without Bail, and therein set forth the government's version of the facts. The court finds it unnecessary to repeat all of those factual allegations here, and, therefore, only recites those allegations giving rise to the offenses alleged in the superseding Indictment.

2. Pursuant to § 2423(b), "[A] United States citizen ... who travels in foreign commerce ... for the purpose of engaging in any sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of Chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States" is guilty of an offense punishable by fine and/or not more than 15 years imprisonment. 18 U.S.C. § 2423(b).

3. Pursuant to § 2251A(b)(2)(A), "[w]hoever ... obtains custody or control of a minor ... with the intent to promote ... the engaging in of sexually explicit conduct by such minor for the purpose of producing any visual depiction of such conduct," and "in the course of [such conduct] the minor or the actor traveled in or was transported in interstate or foreign commerce" is guilty of an offense punishable by fine and/or not less than 20 years imprisonment or for life. *See* 18 U.S.C. § 2251A(b)(2)(A) and (c)(1). For ease of reference, when the court refers to § 2251A in this opinion it refers to the provision under which Bredimis is charged in the Indictment, specifically, § 2251A(b)(2) and (c)(1).

4. Bredimus's motion seeks to dismiss Counts 1 through 4 of the original Indictment returned by the grand jury on March 5, 2002, which charged him with three counts of traveling in foreign commerce with intent to engage in a sexual act with a juvenile in violation of 18 U.S.C. § 2423(b) and one count of traveling in foreign commerce with intent to promote child pornography in violation of 18 U.S.C. § 2251A. Approximately one month after Bredimus filed his motion, the grand jury returned a superseding Indictment, which charged him in two counts, rather than four, with a violation of 18 U.S.C. § 2423(b)(Count One) and 18 U.S.C. § 2251A

## II. Defendant's Motion to Dismiss

Bredimus contends that the Indictment is jurisdictionally defective, and should be dismissed for several reasons. First, he contends that both statutes, as applied to him, are unconstitutional because they regulate conduct occurring outside the jurisdiction of the United States. Second, he contends that § 2423(b) is unconstitutional because it exceeds the scope of Congress's power to regulate the channels of commerce under the Commerce Clause of the United States Constitution. Third, he asserts that § 2423(b) unconstitutionally restricts the fundamental right to travel because it unreasonably burdens travel from this country by punishing nothing more than one's thought processes. Fourth, he contends that the offense set forth in § 2423(b) is an impermissible inchoate offense because it punishes one who crosses a foreign border with the requisite intent without requiring the commission of any other act. The government responds that § 2423(b) and § 2251A are valid exercises of Congress's authority under the Commerce Clause to regulate the use of the channels of interstate commerce, and, moreover, the constitutionality of § 2423(b) has been upheld as a valid exercise of that authority. The government further responds that the statutes do not criminalize "mere thoughts," as they both punish the act of exiting the United States and traveling to a foreign country for the purpose of engaging in an unlawful sexual act with a individual under the age of 18. Finally, the government contends that the statutes are not unconstitutionally applied to Bredimus because the alleged acts constituting the offenses occurred within the United States, and that, in any event, Con-

gress has authority to exercise extraterritorial jurisdiction over sex tourists. The court addresses both statutes in turn.

### A. The Constitutional Challenge to 18 U.S.C. § 2423(b)

#### 1. Commerce Clause Challenge

Bredimus contends that Congress may not punish one who travels in foreign commerce merely because he has the intent to commit an illegal or immoral act on foreign soil. He relies on *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917), for the proposition that an individual is subject to congressional authority under the Commerce Clause only when he either arranges for a passenger's movement or transports the individual directly himself in interstate or foreign commerce. Bredimus acknowledges Congress's power to regulate the transportation of people or things across state lines or a foreign border for an immoral or improper purpose; however, he maintains that criminalizing the transportation of oneself in commerce for such purposes exceeds the scope of Congress's Commerce Clause authority.

■ Section 2423(b) provides, *inter alia*, for criminal penalties when a United States citizen travels in foreign commerce for the purpose of engaging in an unlawful sexual act with a juvenile. The Constitution expressly grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8 cl. 3. The term "foreign commerce," as used in Title 18, includes commerce with a foreign country, *see* 18 U.S.C. § 10, and is defined in the *Fifth Circuit Pattern*

(Count Two). In his motion to dismiss, Bredimus asserts that the statutes are unconstitutional as applied to him and exceed the scope of Congress's authority under the Commerce Clause. Inasmuch as the parties' written sub-

missions and issues presented in Bredimus's motion equally apply to the superseding Indictment, the court will consider his motion to dismiss in light of the superseding Indictment.

*Jury Instructions* as "commerce or travel between any part of the United States, including its territorial waters, and any other country, including its territorial waters." *Fifth Circuit Pattern Jury Instruction 1.40* (West 2001); *see also United States v. Montford,* 27 F.3d 137, 139–40 (5th Cir.1994)("Congress intended foreign commerce to mean travel to or from, or at least some form of contact with, a foreign state."). Congress's authority to regulate foreign and interstate commerce is plenary, and may be exercised to its utmost extent without limitation, except as prescribed by the Constitution. *See United States v. Lopez,* 514 U.S. 549, 553, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)(citing *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 196, 6 L.Ed. 23 (1824)).

■ Congress's authority to regulate foreign is extremely broad, being even broader than its power to regulate interstate commerce. *See Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 448, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979)("Foreign commerce is preeminently a matter of national concern[,] and "there is evidence that the Founders intended the scope of the foreign commerce power to be ... greater" than the scope of the interstate commerce power."). Congress's authority under the Commerce Clause is moreover broad enough "to stretch beyond the simple regulation of commercial goods traveling in interstate and foreign commerce to include regulation of non-economic activities ... that affect, impede, or utilize chan-

nels of commerce." *United States v. Cummings,* 281 F.3d 1046, 1048 (9th Cir.2002) (citations omitted). The Supreme Court has identified three broad categories of activity that Congress is permitted to regulate under its commerce power. First, Congress can regulate "the use of the channels of interstate commerce." *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624. Second, Congress may regulate "the instrumentalities of interstate commerce, or persons or things in interstate commerce." *Id.* Third, Congress may regulate those activities that "substantially affect interstate commerce." [5] *Id.* at 558–59, 115 S.Ct. 1624. The parties agree that if § 2423(b) is to be upheld, it must be under the first category of regulation, that is, the use of channels of interstate commerce.[6] *See also United States v. Han,* 230 F.3d 560, 562 (2d Cir.2000)(stating that § 2423(b) falls under Congress's authority to regulate the use of the channels of interstate commerce); *United States v. Brockdorff,* 992 F.Supp. 22, 24 n. 3 (D.D.C.1997)(expressing that constitutionality of § 2423(b) based on Congress's authority under the Commerce Clause presents a "channels of commerce" issue).

■ The first category of regulation, reaches the "misuse" of the channels of interstate or foreign commerce, *Perez v. United States,* 402 U.S. 146, 150, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), and refers to the interstate transportation routes through which persons and goods move.

---

5. The court recognizes that *Lopez* is an interstate commerce case; however, the court applies its analytical framework in the area of foreign commerce where Congress has even broader authority. *See Cummings,* 281 F.3d at 1049 n. 1. Even in the absence of such authority, the resolution of this issue necessarily requires such analysis because whatever authority Congress has to regulate interstate commerce, it has even greater authority to regulate foreign commerce.

6. Since the parties agree that the constitutionality of § 2423(b) requires an analysis under Congress's authority to regulate the use of the channels of commerce, the court expresses no opinion whether the statute falls under one of the other two categories of activities that Congress is permitted to regulate.

*United States v. Bailey*, 115 F.3d 1222, 1226 (5th Cir.1997)(internal quotation and citation omitted), *cert. denied*, 522 U.S. 1082, 118 S.Ct. 866, 139 L.Ed.2d 764 (1998). That Congress has authority "to keep the channels of interstate commerce free from immoral or injurious uses has been frequently sustained, and is no.longer open to question." *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (quoting *Caminetti v. United States*, 242 U.S. 470, 491, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). Because Congress's authority is even more broad in the area of foreign commerce, it necessarily follows that it has authority to keep the channels of foreign commerce free from immoral or injurious uses. As such, Congress's authority under the Commerce Clause is broad enough to include individuals who travel in foreign commerce for the purpose of engaging in prohibited sexual activity with minors. The court concludes that § 2423(b) does not exceed Congress's authority under the Commerce Clause.

Bredimus also contends that the statute is unconstitutional because it unreasonably burdens travel from this country by punishing nothing more than a person's thought processes, and therefore violates his fundamental right to travel. Although the right to travel is a fundamental right, it does not encompass traveling for illicit purposes. *See Hoke v. United States*, 227 U.S. 308, 320–323, 33 S.Ct. 281, 57 L.Ed. 523 (1913); *Brockdorff*, 992 F.Supp. at 25. The court therefore determines that the statute, which criminalizes foreign travel when it is done for an illicit purpose, does not impermissibly burden a person's fundamental right to travel. *See id.*

Further, the court rejects Bredimus's argument that the statute is invalid because it requires no effect in the United States. Section 2423(b) contains an explicit jurisdictional element. When the accused is a United States citizen, the statute requires that such person travel in foreign commerce to effect federal jurisdiction. Thus, the crime is complete when a United States citizen exits the United States and travels to a foreign country for the purpose of engaging in unlawful sexual activity with a juvenile. *See e.g. United States v. Gamache*, 156 F.3d 1, 8 (1st Cir.1998)(finding that crime under § 2423(b) complete when a defendant travels in interstate commerce with the requisite intent and purpose). The statute therefore targets activity that occurs within the United States, namely, travel from the United States to a foreign country with the requisite intent.

The crux of Bredimus's argument appears to be that the statute is unconstitutional because it seeks to criminalize sex acts that occurred in Thailand; however, since 2423(b) deals with *traveling* in foreign commerce (that is, from the United States to a foreign country) *for the purpose of* engaging in a sexual act with a juvenile, his argument misses the mark. The Indictment alleges that Bredimus *knowingly* traveled from Texas to Thailand for the purpose of engaging in a sexual act with an individual under the age of 18. The government maintains that Bredimus completed his crimes when he exited the United States with the requisite intent. That the accused actually engage in a sexual act with a juvenile is not required, and therefore not necessary to obtain a conviction under the statute. Evidence that the alleged sex acts occurred *may* be relevant to prove Bredimus's intent; however, the actual commission of those acts is not necessary for a conviction under the statute. As stated before, a United States citizen commits a crime under § 2423(b) if the individual travels in

foreign commerce (that is, from the United States to a foreign country) with the requisite intent.[7]

■ The court concludes that § 2423(b), which punishes travel in foreign commerce with the requisite intent, is a valid exercise of Congress's authority under the Commerce Clause. The Third and the Sixth Circuit, and one other district court have also considered the constitutionality of § 2423(b), and have determined that it is a valid exercise of Congress's authority under the Commerce Clause. *See Han*, 230 F.3d at 562 (§ 2423(b) valid exercise of Congress's authority under Commerce Clause); *Brockdorff*, 992 F.Supp. at 25 (upholding constitutionality of § 2423(b)); *United States v. Stephen*, 19 Fed.Appx. 196, 197 (6th Cir.2001)(unpublished opinion)(affirming district court's decision upholding constitutionality of § 2423(b)). In addition, other courts have found similar statutes to be valid exercises of Congress's authority under the Commerce Clause. *See United States v. Delpit*, 94 F.3d 1134, 1149 (8th Cir.1996)(stating in dicta that the interstate murder-for-hire statute, 18 U.S.C. § 1958(a), which requires a showing of interstate travel with requisite intent, was unquestionably a valid exercise of Congress's commerce power); *United States v. Crawford*, No. 00–CR–59–B–S, 2001 WL 185140, at * 2 (D.Me. Jan. 26, 2001)(upholding constitutionality of 18 U.S.C. § 2261A, the interstate stalking statute, which features element of interstate travel with certain illegal motive); *United States v. Von Foelkel*, 136 F.3d 339 (2d Cir.1998)(upholding constitutionality of 18 U.S.C. § 2262(a)(1), which criminalizes crossing a state line with the intent to violate a protection order and then violating it, as valid exercise of Congress's Commerce Clause authority); *United States v. Gluzman*, 154 F.3d 49 (2d Cir.1998)(upholding the constitutionality of 18 U.S.C. § 2261, which punishes a person who travels across a State line with intent to injure, harass, or intimidate that person's spouse or intimate partner). Accordingly, no basis exists to dismiss Count 1 as an invalid exercise of Congress's power under the Commerce Clause.

### 2. Constitutionality of Applying § 2423(b) to Bredimus

As previously noted, Count 1 of the Indictment, which deals with § 2423(b), charges Bredimus, a United States citizen, with having knowingly traveled in foreign commerce, by commercial airlines, from Texas to Thailand for the purpose of engaging in a sexual act (as that term is defined in 18 U.S.C. § 2246) with children under the age of 16. Bredimus challenges the validity of applying § 2423(b) in his case because it criminalize conduct occurring entirely within another sovereign nation. Bredimus explains that his arrival in Thailand was preceded by business trips to two other sovereign nations (namely, Tokyo, Japan and Hong Kong, China), and that the only travel in foreign commerce that occurred was his travel from the United States to Toyko. He argues that the statute is being unconstitutionally applied to his subsequent travel from Hong Kong to Thailand and to acts that allegedly occurred while he was in Thailand. The government contends that Bredimus committed the alleged acts mostly or completely within the United States.

At this stage, the court cannot say that the statute is being unconstitutionally applied because the Indictment charges that Bredimus *knowingly* traveled in foreign

---

**7.** When the court herein refers to the "United States," it refers to the United States or its territorial jurisdiction. Likewise, when the court refers to a "foreign country," it refers to a foreign country or its jurisdiction.

commerce for the purpose of engaging in prohibited sexual activity with a minor. If it is established that Bredimus formed the requisite intent while he was in the United States or its territorial jurisdiction, his subsequent travel between two independent sovereign nations is of no moment. Similarly, the place where an individual acts on his intent (that is, the place where the alleged sexual act takes place) is irrelevant to whether the person traveled from the United States or its territorial jurisdiction for the purpose of effectuating that intent.

▇ Bredimus contends that his arrival in Thailand was preceded by business trips to two other sovereign foreign nations. The court observes, however, that it is not necessary for the government to prove that illegal sexual activity was the sole purpose for the foreign travel. *See United States v. Garcia–Lopez,* 234 F.3d 217, 220 (5th Cir.2000). A person may have several different purposes or motives for such travel, and each may prompt, in varying degrees, the act of making the journey. Of course, the government must prove beyond a reasonable doubt that *a* dominant motive or motivating purpose of the travel from the United States to a foreign country was to engage in a sexual act with a juvenile. *See id.* at 219. The government maintains that Bredimus formed the *mens rea,* that is, the intent prohibited by § 2423(b), in the United States, and traveled from the United States to a foreign country so that he could bring that intent to fruition. Because the Indictment alleges conduct that occurred within the United States or its jurisdiction, the court concludes that the statute is not being unconstitutionally applied to Bredimus.

The court observes that both parties may not be properly focused on the elements necessary to prove the offense under the statute. The Indictment alleges

that Bredimus traveled in foreign commerce for the purpose of engaging in a sexual act with a juvenile; however, Bredimus seems to think that the crime for which he is being accused is that he engaged in a sexual act with a child while in a foreign country. The government, on the other hand, appears to be focused on what took place in Thailand as a means to establish that Bredimus traveled with the requisite intent, rather than on other independent acts which demonstrate that he actually traveled from the United States to a foreign country with the requisite intent.

In any event, even though the government has not yet presented any evidence to indicate that Bredimus had the requisite intent prior to arriving in a foreign country or jurisdiction, this failure relates to whether the government can produce evidence to carry its burden at trial. The court assumes that such evidence will be forthcoming at trial. Given the time and efforts of the court and parties, and the restriction placed on Bredimus's freedom, the court will be extremely disappointed if no such evidence is presented at trial, Should the government fail to present evidence, direct or circumstantial, showing that Bredimus knowingly traveled in foreign commerce for the purpose of committing a sexual act with a juvenile, the court will make such rulings as necessary. At this stage, however, the court deals with the constitutionality of the statute, not the level of proof necessary to sustain a conviction at trial.

For the reasons stated herein, the court determines that § 2423(b) is not unconstitutional as applied to Bredimus, and no basis exists to dismiss Count 1 of the Indictment.

### B. Extraterritorial Application of § Section 2251A(b)(2)(A)

Bredimus also contends that Count 2 of the Indictment should be dismissed. As

previously stated, Count 2 alleges that Bredimus traveled in foreign commerce from Texas to Thailand with the intent to promote the engaging in of sexually explicit conduct by minors for the purpose of producing visual depictions of such conduct, and knowingly obtained custody and control of minors and offered to obtain custody and control of them, in violation of 18 U.S.C. § 2251A(b)(2)(A) and (c)(1). Bredimus maintains that the court is without jurisdiction over the offense charged in Count 2 because all the alleged unlawful acts were committed in Thailand, a foreign country outside the United States or its territories, and § 2251A does not apply to extraterritorial acts. He therefore concludes that § 2251A is being unconstitutionally applied to him. The government responds that Congress has authority to regulate wholly extraterritorial behavior of United States citizens, and may attach extraterritorial effect to its penal enactments to enforce its laws beyond the territorial boundaries of the United States. The government further contends that because Congress intended for § 2251A to apply extraterritorially, the court may exercise jurisdiction in this case.

■■■ As an initial matter, the court disagrees with Bredimus's characterization of the issue. Congress has the power to regulate the conduct of American citizens beyond the territorial boundaries of the United States. *See Steele v. Bulova Watch Co.,* 344 U.S. 280, 282, 73 S.Ct. 252, 97 L.Ed. 319 (1952); *see also United States v. Perez–Herrera,* 610 F.2d 289, 289 (5th Cir.1980); *United States v. Columba–Colella,* 604 F.2d 356, 358 (5th Cir.1979); *United States v. Mitchell,* 553 F.2d 996, 1001 (5th Cir.1977). Moreover, Congress has the authority to attach extraterritorial effect to its penal enactments. *See United States v. Baker,* 609 F.2d 134, 136 (5th Cir.1980). Accordingly, the resolution of

the jurisdictional issue in this case depends not on Congress's authority to pass the statute, but instead on whether on whether Congress intended the statute to be applied extraterritorially. *See Steele,* 344 U.S. at 282–83, 73 S.Ct. 252; *see also Blackmer v. United States,* 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *Baker,* 609 F.2d at 136.

■■■ Section 2251A is silent with respect to its extraterritorial application to conduct outside the United States. Generally, congressional enactments are presumed to apply only within the territorial jurisdiction of the United States. *See Sale v. Haitian Centers Council, Inc.* 509 U.S. 155, 188, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993). Notwithstanding this presumption, a statute may be given extraterritorial effect if the nature of the law permits it and congressional intent is clear. *See United States v. Bowman,* 260 U.S. 94, 98, 43 S.Ct. 39, 67 L.Ed. 149 (1922); *Perez–Herrera,* 610 F.2d at 290; *Baker,* 609 F.2d at 136; *United States v. MacAllister,* 160 F.3d 1304, 1307 (11th Cir.1998), *cert. denied,* 528 U.S. 853, 120 S.Ct. 318, 145 L.Ed.2d 114 (1999). That Congress intended to exercise its extraterritorial power may be inferred from the nature of the offense and other legislative efforts to eliminate the type of crime involved. *Baker,* 609 F.2d at 136. In considering whether a statute is to be applied extraterritorially, the Supreme Court has stated:

> The necessary locus, when not specially defined, depends upon the purpose of Congress as evinced by the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nations. Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement and frauds of all kinds,

which affect the peace and good order of the community, must of course be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard . . . .

But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers or agents. Some such offenses can only be committed within the territorial jurisdiction of the government because of the local acts required to constitute them. Others are such that to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

*Bowman,* 260 U.S. at 97–98, 43 S.Ct. 39.

The Fifth Circuit has not addressed whether § 2251A may be applied extraterritorially; however, in *Baker,* it considered whether 21 U.S.C. § 841(a)(1), proscribing the possession of a controlled substance with intent to distribute, could be applied extraterritorially. Like § 2251A, Section 841(a)(1) does not explicitly state that it applies to extraterritorial conduct. The court nevertheless held that it could be applied extraterritorially to reach possession of controlled substances on an American flag vessel outside the three-mile territorial jurisdiction of the United States because the location of the vessel clearly indicated an intent to distribute the substance within the United States. 609 F.2d at 138. In determining that the enactment mandated extraterritorial application, the court noted that § 841(a)(1) was part of a comprehensive legislative scheme designed to halt drug abuse in the United States by exercising effective control over the various domestic and foreign sources of illegal drugs, and that the power to control efforts to introduce illicit drugs into the United States from the high seas and foreign nations was necessary to Congress's efforts to eradicate all illegal drug trafficking. *Id.* at 137.

This court concludes that Congress intended § 2251A to be applied extraterritorially. In 1988, Congress passed the Child Protection and Obscenity Enforcement Act, and therein enacted § 2251A. *See* Pub.L. No. 100–690, Title VII, § 7512(a), 102 Stat. 4486. The legislative history of the Act does not evince whether Congress intended the statute to be applied extraterritorially; however, it is clear that this statute seeks to prevent the same type of conduct as that proscribed in 18 U.S.C. § 2251. Section 2251 criminalizes the sexual exploitation of children, including, *inter alia,* the use of a minor to engage in sexually explicit conduct for the purpose of producing child pornography. *See* 18 U.S.C. § 2251. In *United States v. Harvey,* 2 F.3d 1318 (3d Cir.1993), the Third Circuit considered whether the Protection of Children Against Sexual Exploitation Act, which included § 2251, could be applied extraterritorially. Although the court considered the statute in the context

of a sentencing guideline implementing § 2252 that cross-referenced a guideline implementing § 2251, its analysis of the statute is illustrative and instructive. After considering the legislative history of the statute, and a prior Third Circuit decision, the court noted: "Congress passed the Act to 'greatly enhance' the 'weapons to combat child pornography and child prostitution.' [internal footnote omitted]. S.Rep. No. 95–438, 95th Cong., 2d Sess. 10, reprinted in 1978 U.S.C.C.A.N. 40, 47." *Id.* at 1327. The court found that § 2251 was enacted as part of Congress's continuing effort to contain evils caused on American soil by foreign as well as domestic suppliers of child pornography. *Id.* The court further stated that "to deny [extraterritorial application of the Act] 'would be greatly to curtail the scope and usefulness of the statute.'" *Id.* (citations omitted). Similarly, in *United States v. Thomas,* 893 F.2d 1066 (9th Cir.), *cert. denied,* 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990), in addressing whether § 2251 applied to extraterritorial acts, the Ninth Circuit inferred extraterritorial application based on the nature of the offenses in addition to congressional and other legislative efforts to eliminate the type of crime involved. The court observed that as a part of a congressional effort to address and combat pornography and sexual exploitation of children, "Congress has proscribed the transportation, mailing, and receipt of child pornography. Punishing the creation of child pornography outside the United States that is actually, is intended to be, or may be reasonably expected to be transported in interstate or foreign commerce is an important enforcement tool." *Id.* at 1068–69. The court therefore determined that it was likely that Congress intended the statute to reach extraterritorial acts that otherwise satisfy the statutory elements. *Id.* The court also determined that the statute did not violate principles of

international law because international law permits a country to apply its statutes to extraterritorial acts of its nationals. *Id.* at 1068 (citing *United States v. King,* 552 F.2d 833, 851 (9th Cir.1976)), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). Finally, the court concluded that the statute applied to the acts on which the defendant's conviction was based, whether he committed those acts in the United States or not. *Id.* at 1069.

When Congress passed the Child Protection and Obscenity Enforcement Act, it did so, *inter alia,* to enact § 2251A, and to amend § 2251. Both statutes are located in Chapter 110 of Title 18 of the United States Code, which contains offenses addressing sexual exploitation and other abuse of children. Given the location of Section 2251A in the Criminal Code, and the nature of the offense, the court is convinced that it too was enacted to expand Congress's statutory scheme to combat sexual exploitation of children, both domestic and abroad. The court is further persuaded by *Thomas* and *Harvey* and their determination that Congress enacted the anti-child-pornography laws as part of its continuing effort to contain the evils caused on American soil by foreign as well as domestic suppliers of and participants in child pornography, and finds those reasons equally applicable to § 2251A. It only makes sense that this rationale would also apply to such conduct of United States citizens on foreign soil; otherwise, the comprehensive scheme to combat international trafficking of child pornography and sexual exploitation and abuse of children could not be effectively implemented as contemplated by Congress. As noted in *Harvey,* one of the primary motivations for expanding the anti-child-pornography laws was that many of the sources of child pornography never came into the purview of federal investigators. 2 F.3d at 1327

(citation omitted). Similarly, the type of conduct proscribed by § 2251A(b)(2) would in many cases escape the purview of federal authorities because the illegal activity would occur outside the United States, and perhaps in countries where such behavior is legal or tolerated.

Punishing a United States citizen for traveling to a foreign country for the purpose of creating child pornography that could reasonably be expected to be transported in interstate or foreign commerce is an important enforcement tool to combat international trafficking of child pornography, as well as the sexual exploitation and abuse of children. The visual depictions in this case were seized at the time of Bredimus's arrest. Although there is no specific evidence at this stage that Bredimus intended for the child pornography to be brought back to the United States, it can be reasonably inferred that the visual depictions were going to be brought from Thailand to the United States had they not been confiscated. The court reviewed *in camera* the video tape in possession of the government. The person on the videotape engaging in sexual acts with several minor children appears to be Bredimus, as does the person taking the photographs of the minor children. Given the nature of child pornography, its proliferation, and the manner of operation of those who exploit and sexually abuse children, both in the United States and in other countries, the court believes that the images involving the adult male on the videotape with several minor children and the photographs taken by the adult male of several minor children, could be reasonably expected to find their way into interstate and foreign commerce. Assuming that a United States citizen were to travel abroad and later engage in various sexual acts with minors, videotape the sexual acts, and take pictures of the minors during the sexual

encounter, it indeed would be fatuous to believe that the person engaged in such conduct for the sole purpose of leaving the images and all evidence of the conduct in a foreign country. Only the most naive, or the incurable optimist, would believe that such visual images and photographs would remain in the foreign country to never be used or introduced in foreign commerce. Such belief defies common sense and logic. Of course, the law does not require the court to leave common sense and logic at the door when applying or interpreting a penal statute, and the law is not to be considered in a vacuum.

Based on the nature of the offense proscribed by § 2251A and Congress's other legislative efforts to eliminate the sexual exploitation of children, including child pornography, the court determines that Congress intended § 2251A to be given extraterritorial application.

 Before concluding that § 2251A applies to any alleged illegal extraterritorial acts of Bredimus, however, the court must also consider whether such application would violate international law. International law, among other things, allows a nation to apply its laws to the extraterritorial acts of its citizens. *See Rivard v. United States*, 375 F.2d 882, 885 n. 6 (5th Cir.1967); *United States v. Plummer*, 221 F.3d 1298, 1307 (11th Cir.2000); *Thomas*, 893 F.2d at 1069. In this case, it is undisputed that Bredimis is a United States citizen. Since a nation has the authority to exercise control over the extraterritorial acts of its citizens, there is no violation of international law. Accordingly, the court concludes that § 2251A applies to the alleged acts in the Indictment, whether they took place in the United States or in Thailand. As such, there is no basis to dismiss Count 2 of the Indictment.[8]

---

8. Bredimus also contends that § 2251A(b)(2)(A) shares the same constitu-

For the reasons stated herein, Bredimus's Motion to Dismiss the Indictment is denied.[9]

tional infirmities as § 2423(b) because it, like § 2423(b), prohibits crossing a foreign border in order to engage in certain sexual conduct. He argues that § 2251A is unconstitutional for the same reasons he argued that § 2423(b) is unconstitutional. Specifically, he contends that the statute exceeds the scope of Congress's authority to prohibit a person from traveling in a foreign country for the purpose of engaging in unlawful conduct outside the territorial jurisdiction of the United States. The court disagrees. For the same reasons it determined that § 2243(b) is a valid exercise of Congress's Commerce Clause authority, the court concludes that § 2251A(b)(2)(A) is likewise a valid exercise of Congress's authority under the Commerce Clause.

9. The court acknowledges that this ruling took more time than the parties and the court expected. Accordingly, the court will make a *reasonable* adjustment to the current trial setting as necessary. If either side establishes that additional time is needed, the court will extend the current trial setting up to three weeks past its current setting of August 19, 2002.